UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| D'AMICO DRY d.a.c., | § | |
| | § | |
| Plaintiff | § | C.A. NO. 4:22-cv-58 |
| | § | |
| v. | § | FED. R. CIV. P. 9(h) |
| | § | |
| LIGHTHOUSE NAVIGATION AS, | § | ADMIRALTY |
| | § | |
| Defendant. | § | |

## VERIFIED COMPLAINT

Plaintiff, d'Amico Dry D.A.C. ("Plaintiff" or "d'Amico"), by its attorneys Royston, Rayzor, Vickery & Williams LLP and Tisdale & Nast Law Offices, LLC (*pro hac vice* to be filed), as and for its Verified Complaint against the Defendant Lighthouse Navigation AS ("Defendant" or "Lighthouse") alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

2. Venue is proper in this district because there is or will be during the pendency of this action property belonging to or due and owing to Defendant within this district subject to this maritime attachment, as will be more fully discussed herein.

## THE PARTIES

3. Plaintiff d'Amico is a foreign corporation organized and existing under the law of Ireland with an office and principal place of business in Ireland.

4. Upon information and belief, Defendant Lighthouse is a foreign corporation with a principal place of business in Oslo, Norway.

## FACTS

5. Pursuant to a time Charter Party dated September 16, 2021, d'Amico as owner chartered to Lighthouse as charterers of the CIELO DI MONACO (the "Vessel") for the carriage of steel in bulk. (Charter Party, **Exhibit 1**).

6. While at Houston, Texas, U.S. Customs and Border Protection issued a report stating that the dunnage onboard the Vessel was infested and that the dunnage had to remain onboard the Vessel. (Ship Inspection Report, **Exhibit 2**). Lighthouse attempted to dispose of the dunnage but was unable to do so.

7. Upon return of the Vessel to d'Amico at the conclusion of the time Charter Party, Lighthouse redelivered the Vessel with multiple containers full of infested dunnage stowed in one of the Vessel's holds. Lighthouse had been prohibited from off-loading the dunnage in the USA due to the infestation, so it was required to store it in containers.

8. Rider Clause 50b of the Charter Party provides that the Vessel "shall be redelivered free of all dunnage, lining and packing materials." Rider Clause 64 further provides that dunnage is to be removed by charterers, Defendant Lighthouse. (Rider Clauses, **Exhibit 3**).

9. d'Amico's next time charter was to load a cargo from the Mississippi River to discharge in South America. In order to persuade next charterer to accept the Vessel with the containers of infested dunnage stowed on board, occupying cargo space, and to allow a deviation to offload the containers on route, d'Amico agreed to lump sum compensation of $75,000 payable to the new charterers. That amount was to increase if the deviation was longer than 3 days. This was required due to Lighthouse's breach of the Charter Party.

10. d'Amico has incurred damages due to Lighthouse's breach of the Charter Party including but not limited to the costs and time incurred to remove the infested dunnage from the Vessel in a proper manner.

11. d'Amico seeks to attach bunkers onboard another vessel currently believed to be on a time charter to Lighthouse. The M/V BONAS is scheduled to arrive in this District at Houston on or about January 9, 2022. d'Amico may need to store the bunkers during the pendency of this litigation. If this is necessary, d'Amico will file a motion for approval of the costs of removing and storing the bunkers as *custodia legis* expenses.

12. On or around December 23, 2021, d'Amico wrote to Lighthouse giving them an opportunity to pay before legal actions were commenced. The following amounts are due and owing to d'Amico:

- A. $75,000 – Agreed lump sum payment to new charterers pursuant to which they agreed to take delivery of the Vessel with the infested dunnage onboard;

- B. $109,999 – Waiting time and bunkers off Houston as a result of infestation;

- C. $122,925.28 – Deviation off-hire and deviation bunkers under the new Charterer's charter party in relation to the deviation to Colombia to offload the infested dunnage;

- D. $74,662 – Port charges, agent's charges and offloading and disposal charges at Columbia

The total principal amount owed by Lighthouse is $382,586.28. (*See* Email correspondence, **Exhibit 4**). This amount does not include interest, attorneys' fees, arbitrator fees, and possible storage of the bunkers.

13. Despite due demand, Lighthouse has failed to pay d'Amico any amounts due and owing under the Charter Party.

14.     The Charter Party provides that disputes arising thereunder are to be referred to London arbitration with English law to apply. Plaintiff will soon commence London arbitration under Clause 17 of the Charter Party.

15.     Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture of the Federal Rules of Civil Procedure ("Rule B"), but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court. Upon information and belief, Defendant holds title to the bunkers onboard the M/V BONAS. Upon information and belief, the M/V BONAS will arrive in Houston, Texas on or around January 9, 2022. The accompanying Declaration of Jamison T. Jedziniak details the efforts made to locate Lighthouse in this District.

16.     As best as can now be estimated, Plaintiff expects to recover the following amounts in the London Arbitration:

| | | |
|---|---|---|
| A. | Principal amount due to d'Amico: | $382,586.28 |
| B. | Interest at the English rate of 5% per annum[1] Compounded quarterly for 2 years when (when an Award is reasonably expected): | $39,974.95 |
| C. | Costs and Attorneys' Fees awardable under English Law: (GBP 175,000[2]) | $234,973.13 |
| D. | Arbitrator's fees, costs, and expenses: (GBP 60,000) | $80,921.40 |
| E. | National Maritime Services *Custodia Legis* Expenses for 90 Days | $110,500.00 |

---

[1] London arbitration proceedings routinely award interest at 4.5% - 5.0% per annum, attorney's fees, and arbitrator's costs and fees.
[2] Converted from GBP to USD on December 30, 2021.

| | | |
|---|---|---:|
| F. | Estimated costs to store bunkers for 90 days ($2,200.00 per day for barge lease and fleeting Plus $6,000.00 for transportation) | $204,000.00 |
| G. | Total: | $1,052,955.76 |

AMOUNT OF SECURITY SOUGHT: **$1,579,433.64**[3]

17. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8 attaching, *inter alia*, the bunkers on the vessel M/V BONAS, which upon information and belief, are owned by the Defendant within the District for the purpose of obtaining personal jurisdiction over Defendant and any other property onboard the Vessel in which Defendant has an interest, to compel arbitration and for security for its soon to be commenced arbitration proceedings in London as per the Charter Party.

18. Plaintiff has included a request for $110,500.00 of estimated substitute custodian costs and charges. National Maritime Services has agreed to act as the substitute custodian for the property to be attached onboard the Vessel and this estimate is based on its anticipated costs and charges over 90 days. These are *custodia legis* expenses necessary for safekeeping the property under attachment.

19. Since the bunkers removed from the Vessel will need to be stored after removal from the Vessel, Plaintiff has obtained an estimate of the costs to store said bunkers from a local provider of these services. As best as can be estimated at this time, the cost to store bunkers sufficient to secure the Plaintiff's claim is $2,200 per day for leasing the storage barge and transportation costs of $6,000. When multiplied by 90 days (a reasonable estimate of the duration of the *custodia legis* period), the cost estimate to store the bunkers is $204,000.00. Plaintiff will

---

[3] This is 150% amount of the principal claim plus awardable costs, fees, and interest under English law.

immediately update this Court after execution of the writ of attachment if this estimate will change based on the quantity or type of bunkers onboard the Vessel. These too are *custodia legis* expenses necessary for safekeeping of the property under attachment.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint, failing which default judgment be entered against it;

B. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, also pursuant to the United States Arbitration Act 9 U.S.C. §§ 1 and 8, attaching the bunkers aboard the M/V BONAS, up to the amount of **$1,579,433.64** plus any additional amount to be determined in *custodia legis* expenses for the estimated cost of storing the bunkers belonging to, due or being transferred to, from, or for the benefit of the Defendant including but not limited to such property as may be held, received, or transferred in Defendant's name or as may be held, received or transferred for its benefit, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matter alleged in the Verified Complaint.

C. That pursuant to 9 U.S.C. §§201 et seq. this Court recognize and confirm any arbitration award or judgment in Plaintiff's favor against the Defendant as a judgment of this Court;

D.       That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

E.       That the Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable.

Respectfully submitted,

By:   /s/ Richard A. Branca
Richard A. Branca
Texas State Bar No. 24067177
Federal I.D. No. 828076
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
1600 Smith Street, Suite 5000
Houston, TX  77002
Tel:    713-890-3230
Fax:   713-225-9945
richard.branca@roystonlaw.com

By: /s/ Thomas L. Tisdale
Thomas L. Tisdale
Timothy J. Nast
TISDALE & NAST LAW OFFICES, LLC
200 Park Avenue, Suite 1700
New York, NY  10166
Tel:    212-354-0025
Fax:   212-869-0067
ttisdale@tisdale-law.com
tnast@tisdale-law.com
Of Counsel
*pro hac vice* to be filed

**Attorneys for Plaintiff,
d'Amico Dry d.a.c.**

## VERIFICATION

1. My name is Timothy J. Nast.

2. I am over 18 years of age, of sound mind, and capable of making this Verification.

3. I am an attorney with the firm of Tisdale & Nast Law Offices, LLC, counsel for Plaintiff d'Amico Dry d.a.c. and am authorized to make this verification on Plaintiff's behalf. The reason why I signed this verification in lieu of Plaintiff is because Plaintiff has no office or personnel within this Judicial District.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The source of my knowledge and the grounds for my belief are the information provided to me by Plaintiff, the documents provided to me by Plaintiff, and the conversation I had with the Plaintiff.

6. The foregoing is true and correct under penalty of perjury of the laws of the United States of America.

Dated: January 7, 2022
Stamford, CT

_____
Timothy J. Nast